PERSONNEL BOARD — MONIES RECEIVED FROM CONTRACTS Money received from contracts entered into under 74 O.S. 814 [74-814] (1971), constitutes earned income, and, under an Attorney General Opinion dated December 7, 1961, should be deposited in the 813 account. These funds may be spent in the same manner as any 813 monies to meet expenses of the State Personnel Board. Money received from contracts entered into under 74 O.S. 581 [74-581] (1971), constitutes earned income and, under the terms of the statute itself, may be deposited in a separate account or deposited in the existing Personnel Board revolving fund. In either case the money constitutes earned income and is subject to expenditure by the Board in the same manner as any 813 monies to meet expenses of the State Personnel Board. Neither statute allows the Personnel Board to charge an unreasonably high fee simply to insure that the Board would realize a large profit. The Board should generate enough money on a contract to cover only the expenses incurred on said contract. However, if a contract under either statute involves common personnel administration services, the Board must make a reasonable and equitable division of expenses between routine work for Merit System agencies and unusual work benefiting only a contracting party. Such a division is a question of fact to be determined by the Board in light of each specific situation. The legislature did not intend for Merit System agencies to pay for services that the Personnel Board renders for the sole benefit of another party. The Attorney General has considered your opinion request wherein you ask the following questions: "1. How should the Personnel Board handle money received from contracts entered into under 74 O.S. 814 [74-814] (1971)? "2. How should the Personnel Board handle money received from contracts entered into under 74 O.S. 581 [74-581] (1971)?" Regarding your first question, 74 O.S. 814 [74-814] (1971), provides: "Subject to the rules approved by the State Personnel Board, the Personnel Director may enter into agreements with any municipality or political subdivision of the State to furnish services and facilities of the agency to such municipality or political subdivision in the administration of its personnel on merit principles. Any such agreement shall provide for the reimbursement to the State of the reasonable cost of the services and facilities furnished. All municipalities and political subdivisions of the State are hereby authorized to enter into such agreements." Regarding your first question, Section 74 O.S. 814 [74-814] authorizes the Personnel Board to enter into certain types of contracts. As previously noted, this section specifies that "any such agreement shall provide for the reimbursement to the State of the reasonable costs of the services and facilities furnished." This section makes it clear that if the Personnel Board loses money on a contract, the Board would be in violation of Section 814, and such money cannot be later recouped from Merit System agencies during quarterly billings. The legislature specifically intended Section 814 contracts to pay their own way and not be a drain on the system. In allowing the Personnel Board to charge the "reasonable costs of services and facilities furnished," fiscal prudence may require the Personnel Board to insert a reasonable margin for error into the " reasonable costs." Such a margin would serve as a safety factor to insure that the Personnel Board does not lose money on the contract. It is not the intent of Section 814 to allow the Personnel Board to charge an unreasonably high fee simply to insure that the Board would make a large profit. The statute intends that the Personnel Board generate enough money on Section 814 contracts to cover only the expenses incurred on said contracts. Any money the Personnel Board collects on a Section 814 contract to cover expenses and in excess of expenses constitutes earned income, and, under an Attorney General's Opinion dated December 7, 1961, addressed to Mr. W. L. Keating, should be deposited in the Section 813 account. Such funds are subject to expenditure by the Board in the same manner as monies credited to the fund under Section 813, i.e. for expenses of the State Personnel Board. Regarding your second question, 74 O.S. 581 [74-581] (1971), provides in pertinent part: "That any department of the State government . . . may contract with any other department of State government . . . having under its control the personal services . . . to perform needed work for or on behalf of the State . . . The department or institution or subdivision obtaining and receiving such services shall pay or otherwise compensate the department or institution performing the work for the fair value thereof . . . which said funds shall be deposited in a special depository account to be kept separately from all other collections and may be expended by the departments, subdivisions or institution performing the services by voucher issued by said department or institution and drawn on the State Treasurer; provided, however, that when such services are performed by any department or institution having a revolving fund, such payments may be credited to and become a part of such revolving fund." Section 74 O.S. 581 [74-581] plainly allows the Personnel Board to deposit applicable funds in a separate account, or to deposit said funds in their existing revolving fund. In either case, the money would constitute earned income and be subject to expenditure by the Board in the same manner as monies received under Section 813, i.e. for expenses of the State Personnel Board. Here again the law contemplates that the Personnel Board earn enough money on a contract to cover only the expenses incurred on said contract. In some instances a contract under either Section 814 or Section 581 may involve some common personnel administration services. An example of such common personnel services is interviewing, testing, and maintaining registers of applicants for classified positions common to both the contracting party and one or more Merit System agencies. In light of Section 814 it is incumbent on the Board to make a reasonable and equitable division of the expenses between routine work for Merit System agencies and unusual work benefiting only a contracting party. Such division is a question of fact to be determined in light of each specific situation. The legislature did not intend for Merit System agencies to pay for services that the Personnel Board renders for the sole benefit of another party. If the contract work benefits only the contracting party, the Personnel Board must exercise caution that Merit System agencies do not bear any expense arising from performance of the contract. Any such contract expenses paid by Merit System agencies must be credited to that agency's account on a subsequent quarterly billing. If the contract work benefits the contracting party and the Merit System agencies, the Merit System agencies should pay a proportionate share of the contract expenses. Computing a proportionate share is a question of fact to be determined in each case by the Personnel Board. It is, therefore, the opinion of the Attorney General that your questions should be answered as follows. Money received from contracts entered into under 74 O.S. 814 [74-814] (1971), constitutes earned income, and, under an Attorney General Opinion dated December 7, 1961, should be deposited in the Section 813 account. These funds may be spent in the same manner as any Section 74 O.S. 813 [74-813] monies to meet expenses of the State Personnel Board. Money received from contracts entered into under 74 O.S. 581 [74-581] (1971), constitutes earned income and, under the terms of the statute itself, may be deposited in a separate account or deposited in the existing Personnel Board revolving fund. In either case the money constitutes earned income and is subject to expenditure by the Board in the same manner as any Section 813 monies to meet ex- penses of the State Personnel Board. Neither statute allows the Personnel Board to charge an unreasonably high fee simply to insure that the Board would realize a large profit. The Board should generate enough money on a contract to cover only the expenses incurred on said contract. However, if a contract under either statute involves common personnel administration services, the Board must make a reasonable and equitable division of expenses between routine work for Merit System agencies and unusual work benefiting only a contracting party. Such a division is a question of fact to be determined by the Board in light of each specific situation. The legislature did not intend for Merit System agencies to pay for services that the Personnel Board renders for the sole benefit of another party. (Daniel J. Gamino)